Our final case on the docket today is agenda number 12, number 128871. People of the State of Illinois v. Santana Grayer. Counsel? Good morning. May it please the Court, Counsel. My name is Christina Law Merriman from the Office of the State Appellate Defender on behalf of Santana Grayer, the appellant. The issue before the Court this morning is whether the State proved, beyond a reasonable doubt, that Mr. Grayer had the specific intent to commit vehicular hijacking while lawfully seated in the backseat of a Lyft car. At Mr. Grayer's bench trial, the State's own evidence established that Mr. Grayer was intoxicated at a social gathering, the people he was with responsibly ordered a Lyft to take him home, and during that Lyft ride, Mr. Grayer drunkenly believed he was being driven in the wrong direction. Mr. Grayer then pulled on the driver's sleeve, getting his attention, and asked to drive the car himself. After the driver denied Mr. Grayer's irrational request to drive the Lyft car himself, Mr. Grayer drunkenly told the Lyft driver he was going to kill him, and the driver then pulled over at a gas station. Now, the State did not charge Mr. Grayer with battery or assault. Instead, the State alleged that Mr. Grayer's conduct while lawfully seated in the backseat of this Lyft car amounted to attempt vehicular hijacking. The trial court agreed, and the appellate court affirmed with one justice dissenting. In reviewing the sufficiency of the evidence, the appellate court incorrectly found that Mr. Grayer's voluntary intoxication was not relevant to the element of specific intent due to the 2002 amendment to Section 6.3 of the Criminal Code. But the appellate court majority was wrong, as Mr. Grayer's voluntary intoxication is just one factor of many that may be considered when reviewing the sufficiency of evidence of specific intent. Now, to be clear, Mr. Grayer has never sought relief under Section 6.3, neither at trial nor on appeal. It was the State, not Mr. Grayer, that first cited Section 6.3 in its appellate court brief. Indeed, it is our position that Section 6.3 does not apply to this case at all. That being said, Mr. Grayer does now cite to the legislative history of Section 6.3, but solely to rebut the appellate court's conclusion that due to the 2002 amendment to Section 6.3, Mr. Grayer's voluntary intoxication is not relevant to the element of specific intent. The legislative debate concerning the 2002 amendment makes clear that the amendment removed voluntary intoxication as an affirmative defense, but the amendment was not intended to impact a defendant's ability to use evidence of voluntary intoxication to indicate a required mental state in specific intent offenses. This is consistent with Illinois common law, as Illinois courts have long recognized that while voluntary intoxication is not generally an excuse to criminal conduct, a defendant may be incapable of forming specific intent when a defendant's level of intoxication suspends the defendant's power of reason. Well, counsel, when we talk about Section 6.3, let's look at the language of it specifically. And when it tells us that unless it's involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law, how does that impact your argument that we should be looking at his voluntary intoxication? So Section 6.3, which is found in Article 6 of the Criminal Code, it defines the affirmative defense of intoxication, which Section 6.3 now clearly states that that affirmative defense can only be raised when a defendant's intoxication is involuntarily produced. However, that language, again, is found in Article 6, which is solely about affirmative defenses. In fact, the section following Section 3.6.4 states that defenses found in Article 6 are affirmative defenses. The 2002 amendment did not make any changes to Article 4, which governs criminal acts and mental states and defines intent, and it made no changes to the intent statute, which Mr. Greer was convicted of. And so as our common law has recognized long before voluntary intoxication was ever designated as an affirmative defense in our Criminal Code in 1961, Illinois courts have always recognized that a defendant's voluntary intoxication may negate the required mens rea and specific intent offenses as a reasonable doubt argument. By abolishing the affirmative defense of voluntary intoxication, by amending Section 6.3, by no means removed this longstanding common law rule that defendants can use their intoxication as a way to negate specific intent and specific intent offenses. And indeed, this court's jury instruction committee agrees both with the legislative intent and Illinois common law that a defendant's voluntary intoxication is still relevant in specific intent cases. The committee reviewed the voluntary intoxication instructions following the 2002 amendment and in the committee comments recognized that it's no longer an affirmative defense, but those pattern instructions remain in the criminal pattern jury instructions and indicate that a defendant's voluntary intoxication still may negate the required mental state and specific intent offenses. Thus, we're asking this court to find that the legislature's removal of voluntary intoxication from the affirmative defense statute did not abolish this longstanding rule. Counsel, it sounds to me like you're asking us to do what the trial court didn't do. The trial court looked at this evidence and they're aware, the trial court is also aware of the legislature's change in the statute and the defendant's intoxication, but the trial court still found the defendant was guilty and was able to form the intent that he needed. So, what do we do with that? I mean, the trial court heard the evidence. He saw the defendant's demeanor, all of the things that a trial court does, and it sounds to me like you're asking us to find that the evidence wasn't sufficient because what? That's correct. If now we can turn to the facts of Mr. Greer's case, as Your Honor correctly noted, this issue really didn't come up until direct appeal and the trial court did consider evidence of voluntary intoxication. It was undisputed at Mr. Greer's trial that he was intoxicated during this incident. The complaining witness testified that when he first entered the Lyft car, he was drunk. He was moving from side to side, unable to walk in a straight line. He also testified that later at the gas station, Mr. Greer was unable to run due to his level. Go back to that. That's what I was looking for. He was intoxicated, so what? Well, I think it's relevant to this case not only because it colors the entire situation of what happened in that car. I think a completely sober person seated in the back of the car is very different than a highly intoxicated person in the back of the car. This court can find that either Mr. Greer's level of intoxication did negate his ability to form specific intent, and even if this court doesn't, this court still can find that the state's evidence was insufficient as Mr. Greer's voluntary intoxication was just one factor of many that this court can consider when reviewing the sufficiency of specific intent. This is not a typical vehicular hijacking situation that we hear about in the news. This is not a situation where a person approached a driver with a gun or a weapon, ordered the driver out of the car, and demanded the car keys. What constitutes vehicular hijacking? A vehicular hijacking is when a person, through force or threat, takes the vehicle from the immediate presence of another individual. Or attempts to take it, right? An attempt would be an attempt at that. Did that happen here? No, Your Honor. Okay. This is a situation where a drunk individual was lawfully in the backseat of a car, trying to get home safely, and Mr. Greer believed, true or not, we still don't know, that he was being driven in the wrong direction. So, Counsel, if Mr. Greer had tried to take the vehicle someplace else other than home, would that make a difference? I'm sorry, I'm not understanding the question. Well, you were arguing that he was simply trying to get home, and he was trying to take the vehicle so he could get home. If he had been doing the same thing, but, say, that he was wanting the vehicle to drive to another location, would that make any difference? No, and perhaps, Your Honor, maybe I was not clear. Mr. Greer, in his drunken state, was just trying to get home. I think that was undisputed. The people ordered the Lyft to remove him from the party. And I don't think it matters whether he necessarily wanted to go home or somewhere else specifically, but he believed he was being in the wrong direction. And, again, I think he was so drunk that he wasn't even capable of giving the Lyft driver correct directions, and it never was even established whether the Lyft driver was actually going in the wrong direction. As the Lyft driver said, he was following the GPS directions. I think what matters here is, considering the totality of the circumstances, this is a highly intoxicated individual, believing they're being driven in the wrong direction, tried to get the attention of the Lyft driver, irrationally asked to drive the car, and then, when denied that request, made drunken statements that I think amounts to nothing more than drunken hyperbole, and then the Lyft driver went into the gas station. And Mr. Greer's actions there at the gas station also were not indicative of a specific intent to commit a vehicular hijack. Did he end up in the driver's seat? He did. Did he also end up in the vehicle with the keys to the vehicle and apparently making at least some kind of motion that one could infer he was trying to Well, actually, I think it was the keys to the driver's home, not the key to the vehicle, but attempting, at least one could infer, to try to start the vehicle with those keys? Yes, so correct. It was the house keys as the driver got to the gas station, got out of the car, and went into the gas station store. Mr. Greer waited at that gas station for 20 minutes. The video that was introduced, it shows clips. If you can see the time stamps, he waited for 20 minutes, appearing to actually wait for the Lyft driver perhaps to complete the ride. And then, yes, he eventually got into the driver's seat, and there's been continued dispute over what this video shows. What it does show is that Mr. Greer is reaching forward. However, the video does not show whether or not he was reaching for the ignition with the house keys because the siding of the car and due to the angle of the security camera, you cannot see the ignition of this car at all in the video. You can't tell if it's a key start car, and we don't know if it's a push start car because it's not visible in the video. And so we don't know if Mr. Greer was reaching for a cupholder or trying to turn on the radio or reaching really for anything else in front of him. And indeed, Mr. Greer We do know that the standard is viewing the evidence in the light most favorable to the people. That's correct. And our position still is even in the light most favorable to the state. The state's evidence still was insufficient. This was, again, a drunk person who was just trying to take a Lyft car home, and indeed his actions at the gas station where he fell asleep inside the car, remained at the scene for 40 minutes, is simply inconsistent with a person who was trying to steal a car. Did he have a choice to, I mean, he couldn't drive the car off because he didn't have the key to the car, right? That's correct. But it's also unclear if Mr. Greer had any other way to get home. Again, he was highly intoxicated. And again, it really defies logic that a person who had just attempted to hijack a car would not only remain at the crime scene for over 40 minutes, but then would fall asleep inside the car he had just attempted to steal. But he was drunk and he fell asleep. I mean, that's not so incredible, is it? I think the whole situation when viewing, yes, everything through the lens of a drunk person, but I think Mr. Greer had to form the specific intent to commit a vehicular hijacking while he was lawfully in the backseat of the Lyft car, right? This is how the state charged this case. They allege that the acts that constituted the attempt occurred while in the car, not at the gas station. Now the state, and the state has always looked to evidence of events that happened afterwards to support that there was specific intent, but the intent had to be formed when he was in the backseat of that car, drunkenly believing, again, wrong or right. Counsel, following up on Justice Holder White's question, aren't we to look at this evidence in the light most favorable to the state? This passenger leaned over, grabbed the driver, threatened to kill him. What are we supposed to do with that? Do we excuse that testimony because he was drunk? So first, we don't excuse his behavior, and indeed Mr. Greer has been very apologetic of his behavior and elocution. The Lyft driver pulled over because he feared, and I think it's reasonable to believe him when he said he feared for his safety. He pulled over and left the car because he feared for his safety. It's not unreasonable what the complaining witness did, and the testimony was that he was scared for his safety and scared for his life, but the state did not charge him with battery or assault. They charged him with a specific intent offense of attempt vehicular hijacking, and thus when you charge a defendant with an inchoate offense like attempt, then the state bears the burden of proving that this defendant subjectively desired to hijack the car. Well, didn't he ask the driver, he demanded that the driver let him drive the car? The testimony and actually Judge Gahn who presided over this bench trial actually admonished the state not to use that language demand because the complaining witness never testified to that fact, and indeed the testimony was that Mr. Greer asked to drive the car and indicated that he wanted to drive the car, but he never demanded or made any sort of threat that he was going to take the car. Indeed, there was no testimony that the complaining witness ever believed that there was a risk of his car being taken. I believe the complaining witness went to the gas station because he feared for his physical safety, not out of fear that his car was about to be hijacked, and I think that's the clear difference here is what Mr. Greer was charged with, and he was charged with a sole count of attempt vehicular hijacking. I think even in the light most favorable to the state, the state's evidence here when looking at the totality of the circumstances just simply was insufficient, and the trial court's ruling really relied on this video from the gas station, and as this court has held in People v. Radojic, if I'm saying that correctly, this court now can view that evidence without giving any deference to the trial court's opinion of that video as the trial court is in no position superior to this court when viewing that evidence, and our position is that the trial court was wrong in that its interpretation of that video is that Mr. Greer was indeed reaching for the ignition, when in fact that video, you cannot determine whether or not he was reaching for the ignition or anything else in front of him. Thus, as a result, if there's no further questions from this court, we ask that you reverse Mr. Greer's conviction for attempt vehicular hijacking as the state's evidence of specific intent was so improbable and so unsatisfactory as to create reasonable doubt of Mr. Greer's guilt. Thank you very much. Mr. Fisher. Good morning again, Your Honors. Counselor, may it please the Court, Assistant Attorney General Garson Fisher for the People. Your Honors, as my friend concedes, as this court has noted in its questions, this is a sufficiency case. We view the evidence in the light most favorable to the state, and so I'd like to begin by addressing what that evidence, viewed in the light most favorable to the state, shows. What it shows is that the defendant grabbed Mr. Ong several times by the shoulder, requested, doesn't really matter, to gain control of the car, and when Mr. Ong said, no, there was testimony that defendant threatened to kill him, Mr. Ong pulled into that gas station because he feared for his safety. He got out of the car. Defendant followed him out of the car. Mr. Ong went into the gas station. At some point, defendant goes into the cup holder in the front seat, finds Mr. Ong's house keys, and then the video shows he sits in the front seat and reaches forward, appearing reasonably to perhaps be trying to start the car so that he could drive it away. Now, to be sure, the video evidence might not conclusively show that he was attempting to start the car, but that is certainly a reasonable inference, viewing the evidence in the light most favorable to the state. So from this, we have at this point clearly sufficient evidence to establish meaningful steps towards taking Mr. Ong's car through the use of force or the threat of force, and sufficient evidence to infer that that was, in fact, defendant's specific intent. In fact, we don't really need to infer it because, as Your Honors have noted, defendant explicitly says that that is his intent. Does it matter at all that it doesn't appear that the defendant ever said he wanted the driver to get out of the car? I mean, he says he wants him to drive, but one of the elements is he knowingly takes a motor vehicle from the person, and it seems that it's like he wants him to let him drive his car. You know, obviously it's – so does it matter at all if he's, like, scoot over? I want you to drive or if – I don't think so because we are viewing the evidence in the light most favorable to the state. We're inferring his specific intent from that evidence and from his statements. There's nothing in the vehicular hijacking statute that requires that the original driver be ejected from the vehicle, that taking means, you know, physically having removed the original driver from the vehicle. So I don't think that that makes a difference here. And, in fact, defendant's only real counterargument to the sufficiency of this evidence is to say, yes, but defendant was so drunk that he couldn't possibly have formed the specific intent to commit this offense. And the plain language of Section 6.3 explicitly states that an intoxicated individual is responsible for his criminal conduct unless that intoxication is involuntary. Now, to be sure, Section 6.4 says the things that we've just talked about, infancy, intoxication, insanity, are affirmative defenses because these are defenses that operate to negate the state's evidence of mens rea. That's how this court has described the affirmative defense of intoxication. That's how lower courts have described it. What defendant is attempting to do here is make an end run around the plain language of 6.3 by saying that beyond the affirmative defense of intoxication that would negate mens rea, that we can make a separate independent argument that the state hasn't satisfied its burden of proving mens rea based on voluntary intoxication. But if that were the case, then the amendment to 6.3 didn't actually do anything here. Moreover, even if we were to leave that aside for a moment, it is effectively asking this court to revive the innocent hypothesis approach to sufficiency cases, to say, well, there might be an innocent explanation that it was drunken hyperbole, but that's not how we approach sufficiency cases. So both because of the plain language of 6.3, which explicitly says that only involuntary intoxication matters, and because we're viewing the evidence in the light most favorable to the state, the evidence here remains sufficient to prove attempt vehicular hijacking. I'd like to briefly touch on defendants' arguments based on legislative history, if I can, because they are unavailing for a couple of reasons. As an initial matter, the plain language is just not ambiguous here. And the language of the statute is the law, not the conversations that happen on the floor of the General Assembly before that statute is passed. So where we have plain, unambiguous language, there's no reason to resort to legislative history at all. Moreover, if the court does look at the legislative history, what it demonstrates is the risk of relying on individual floor statements by legislators in trying to figure out what a statute means and why that is a less reliable source of information than the plain language of the statute. The legislature's conversation about what they were doing here, frankly, indicates some confusion about the state of the law and the language of the statute that they were passing. Moreover, some of that language clearly supports an interpretation consistent with the plain language of the statute here. The sponsor talks about this case where a defendant came home and climbed into bed with, I believe, his daughter's 11-year-old friend as opposed to an actual relative, but was found not guilty on the basis of having not been able to form the mens rea for the sexual abuse offense with which he was charged because of his voluntary intoxication. And the sponsor said, well, that is exactly what we're trying to eliminate here. It's frankly absurd to assume that he would nevertheless be comfortable with that person escaping criminal liability for his acts based on voluntary intoxication if the victim had simply screamed loud enough early enough that he hadn't completed the offense. So the plain language of the statute indicates the General Assembly's clear intent to eliminate voluntarily getting drunk as a way to escape criminal liability for one's actions. And all the defendant is doing here is trying to take an end run around that clear legislative intent as expressed by the plain, unambiguous language of Section 6.3. Unless the court has any questions, people would ask that this court affirm the judgment of the appellate court. Thank you, Your Honor. I first want to start with the state's argument concerning the legislative history and its argument that Mr. Greer is trying to make an end run around the clear language of Section 6.3. Mr. Greer is not. Section 6.3, as stated, only governs voluntary intoxication as an affirmative defense, as that's the appropriate place where it's found in Article 6. And the legislative history, when reading the entire debate in the Senate, makes it very clear that the legislature did consider the common law rule that allows voluntary intoxication to be used as a reasonable doubt argument in specific intent offenses and voluntary intoxication as an affirmative defense. That was specifically brought up at the debate. Indeed, a senator asked the question, well, then, if evidence of voluntary intoxication is still going to be allowed, what's the difference? And several senators responded, explaining that affirmative defenses have to be noticed, that once the defense meets their initial burden, then the state carries the burden of disproving that affirmative defense. And the senators explained that by having a separate statutory affirmative defense while maintaining Illinois' longstanding rule of allowing this reasonable doubt argument has potentially caused confusion in the law. And the legislature was trying to get rid of that confusion, obviously. We're here today because maybe there still is some confusion. But the legislature believed by removing its designation as an affirmative defense would avoid situations where there was confusion. And as the state mentioned, there was this case that prompted the amendment. And the senators that supported the legislature, while believed that maybe having these two different forms of the defense maybe resulted in the acquittal or maybe contributed to the acquittal, also recognized during the debate that the amendment would in no way change a defendant's ability to use evidence of voluntary intoxication to negate a required mental state. That is repeatedly stated during the legislative history. Now, with respect to Mr. Greer and the facts of this case and the standard of review that this court must apply, the trial court's reason for finding that Mr. Greer was not intoxicated to a level that would negate his mental state, the trial court relied on, or I believe Judge Gons stated that he was finding he wasn't drunk enough because he knew, he was aware enough that he was going in the wrong direction. But actually, the trial evidence never established that the Lyft driver actually was, in fact, going in the wrong direction as there was no evidence of the address that had been inputted into the Lyft app or Mr. Greer's home address. So we don't actually know if Mr. Greer in this state was correct in that the Lyft driver was going in the wrong direction. If anything, the evidence shows that the complaining witness was diligently following the GPS directions in the Lyft app and probably was going in the wrong direction. And thus the trial court's conclusion is wrong and is not based on the evidence and is not a reasonable inference, and thus this court should reverse Mr. Greer's conviction. Additionally, the state really discounts the fact that Mr. Greer asked to drive the car in arguing that it doesn't really make a difference, but it does. Because if Mr. Greer had demanded the car or said, then I think this would be a different case, but the fact that Mr. Greer was essentially asking permission, you know, scoot over, let me drive the car, is very different than approaching someone and saying, hey, you get out of the car, give me your car keys. That's not what happened here. Mr. Greer never reached for the steering wheel. He never attempted to take control of the car while he was in the car. He never reached for the car keys. And again, the state alleged that this attempt occurred while he was in the backseat of the Lyft car, and the state's evidence was just simply insufficient to prove that Mr. Greer subjectively was attempting to commit vehicular hijacking. And for all these reasons, we ask this Court, if there's no questions, to reverse Mr. Greer's conviction as the state's evidence was simply insufficient. Thank you very much. This case, number, agenda 12, number 128871, People in the State of Illinois v. Santana Greer, will be taken under advisory.